[Cite as *State ex rel. Cassens Corp. v. Indus. Comm.*, 2022-Ohio-2936.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cassens Corp., | : | |
| Relator, | : | |
| v. | : | No. 21AP-93 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on August 23, 2022

**On brief:** *Morrow & Meyer, LLC, Corey Crognale,* and *Tod T. Morrow*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Andrew J. Alatis*, for respondent Industrial Commission of Ohio.

**On brief:** *Law Office of Carla A. Lombardo, LLC*, and *Carla A. Lombardo*; *Schaffer and Associates, LPA*, and *Thomas J. Schaffer*, for respondent Luis Ybarra.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, P.J.

{¶ 1} Relator, Cassens Corp., initiated this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate an order finding that Cassens violated a specific safety requirement ("VSSR").

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate

determined that the injured employee, Luis Ybarra, established a VSSR. Thus, the magistrate recommends this court deny Cassens' request for a writ of mandamus.

{¶ 3} Cassens has filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Cassens does not challenge the magistrate's recitation of the pertinent facts; however, Cassens objects to the magistrate's conclusion that it is not entitled to a writ of mandamus. More specifically, Cassens asserts the magistrate erred in finding the commission did not abuse its discretion in (1) holding Cassens strictly liable for its employee's failure to clear snow from a windshield despite Cassens' work rule requiring employees to clear windshields; (2) finding that Ohio Adm.Code 4123:1-5-13 applied to over-the-highway cars manufactured for sale to the public; (3) finding that the temporary accumulation of snow constituted a visual impairment of the cab glass for purposes of Ohio Adm.Code 4123:1-5-13(C)(4); and (4) finding that the outdoor staging area was a "factory or workshop" within the meaning of Ohio Adm.Code 4123:1-5-13.

{¶ 4} A brief summary of the factual circumstances is pertinent to our discussion. Cassens provides transport services for automobile manufacturers, transporting newly manufactured vehicles from the manufacturers' factories to dealers and other sellers. In February 2018, respondent Ybarra was working at the outdoor lot of the Chrysler Group Yard in Toledo, Ohio, moving newly manufactured vehicles from the outdoor lot to the staging area where they were to be loaded onto auto carrier trucks or trains. After parking a newly manufactured vehicle in the staging area, Ybarra was walking in the yard when he was struck from behind by a newly manufactured Dodge Durango being driven by another Cassens employee. The newly manufactured vehicle had snow covering its windshield, and the other employee did not see Ybarra or honk his horn. Cassens had a work rule requiring drivers to clear snow off the windshields, and Cassens subsequently terminated the other employee for violating the rule. Ybarra's workers' compensation claim was allowed for numerous conditions.

{¶ 5} Subsequently, on September 23, 2019, Ybarra filed an application for an additional award for VSSR, alleging Cassens had violated Ohio Adm.Code 4123:1-5-13(C)(4) and (7). At the hearing, Ybarra withdrew his argument related to Ohio Adm.Code

4123:1-5-13(C)(7), related to audible warning devices, and proceeded solely on his claim of a violation of Ohio Adm.Code 4123:1-5-13(C)(4), which relates to motor vehicle cab glass. Following a November 2020 hearing, the staff hearing officer granted the VSSR application, finding the Chrysler Group Yard's outdoor yard constituted a "workshop" within the meaning of Ohio Adm.Code 4123:1-5-13, that the newly manufactured vehicle constituted a "motor vehicle" within the meaning of Ohio Adm.Code 4123:1-5-13, and that the accumulated snow constituted a violation of Ohio Adm.Code 4123:1-5-13(C)(4).

{¶ 6}    To be entitled to a writ of mandamus, Cassens must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).  A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 78-79 (1986).  But when the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.  *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987).

{¶ 7}    The dispute here relates to the commission's granting of Ybarra's application for an additional award for an alleged VSSR.  In applying for a VSSR award, the claimant bears the burden of establishing (1) a specific safety requirement exists; (2) the employer failed to comply with the requirement; and (3) the failure to comply was the cause of the injury in question.  *State ex rel. DeMarco v. Indus. Comm.*, 10th Dist. No. 19AP-227, 2021-Ohio-1937, ¶ 6.  Because a VSSR award is a penalty, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer.  *Id.*, citing *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172 (1989); *State ex rel. Precision Steel Servs., Inc. v. Indus. Comm.*, 145 Ohio St.3d 76, 2015-Ohio-4798, ¶ 21.

{¶ 8}    In order for the commission to find Cassens violated Ohio Adm.Code 4123:1-5-13, the violation must have occurred within a workshop or factory.  The administrative code does not define the terms "workshop" and "factory."  However, as this court has noted, "the determination of whether a place of employment is a workshop or factory under Ohio Adm.Code [4123]:1-5 is a finding of fact to be made in the first instance by the commission,

subject to review by the courts only for an abuse of discretion." (Former Ohio Adm.Code Chapter 4121 now codified at Ohio Adm.Code Chapter 4123.) *State ex rel. Haire v. Indus. Comm.*, 154 Ohio App.3d 82, 2003-Ohio-4570, ¶ 21 (10th Dist.), citing *State ex rel. Johnson v. Hilltop Basic Resources, Inc.*, 95 Ohio St.3d 36, 41 (2002). The issue before the court, therefore, is whether the commission abused its discretion in finding that the Chrysler outdoor yard constituted a workshop. *Id.*

{¶ 9} This court has set forth three general principles to guide our review of the commission's interpretation of the term "workshop" as used in the administrative code. First, the term "workshop" does not apply generally to all places of employment. *Haire* at ¶ 22, citing *State ex rel. Double v. Indus. Comm.*, 65 Ohio St.3d 13, 16-17 (1992). Second, the commission may consider the common usage of the term and consult dictionaries to aid in its interpretation. *Id.*, citing R.C. 1.42 and *State ex rel. Wiers Farm Co. v. Indus. Comm.*, 10th Dist. No. 92AP-391, 1993 Ohio App. LEXIS 2102 (Apr. 13, 1993), *aff'd*, 69 Ohio St.3d 569 (1994). Third, "the commission must consider the type of work activities being performed within the area and the machinery used, if any." *Haire* at ¶ 23.

{¶ 10} With these three principles in mind, we turn to the commission's interpretation of the term "workshop" as it applies to the Chrysler outdoor yard. The Supreme Court of Ohio has defined a workshop as used in the administrative code as "a room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise." *State ex rel. Buurma Farms, Inc. v. Indus. Comm.*, 69 Ohio St.3d 111, 113 (1994). Additionally, the Supreme Court has found that an outdoor area can be a workshop within the meaning of Ohio Adm.Code Chapter 4123:1-5 if it is enclosed by perimeter fencing. *State ex rel. Petrie v. Atlas Iron Processors, Inc.*, 85 Ohio St.3d 372, 373 (1999) (finding an outdoor scrapyard with a perimeter fence constituted a workshop, and noting "[t]he fence, in this case, indeed set forth the boundaries of work activity" and "served to keep unauthorized nonemployees out and, in so doing, established its confines as a place accessible only to employees for the purpose of carrying out the company's business").

{¶ 11} Here, the portion of the Chrysler Group Yard facility in Toledo where Cassens employees engaged in their work duties is an outdoor, open-air storage lot where newly manufactured vehicles are stored as they await transport to dealers and other sellers.

Ybarra testified at the hearing that the entire storage lot is surrounded by a fence. In finding the outdoor storage lot constituted a workshop within the meaning of Ohio Adm.Code 4123:1-5-13, the commission relied on the presence of the perimeter fence and concluded that, pursuant to *Petrie*, the outdoor storage lot was, therefore, a workshop. We are mindful however, that the presence of a perimeter fence does not automatically compel the conclusion that the worksite is a workshop for purposes of Ohio Adm.Code 4123:1-5-13. As noted above, the commission still must consider the *type* of work activities performed within the area. *Haire* at ¶ 23.

{¶ 12} The evidence before the commission was clear that no manufacturing occurred at the outdoor storage lot. Instead, after a vehicle was assembled in the indoor factory, Chrysler would stage the vehicle for shipment. At that point, Cassens employees drive the completed vehicles into a designated zone of the outdoor yard where the vehicle awaits transport by either truck or railcar. The terminal manager for Cassens estimated the outdoor yard to be between one-half mile and one mile long, capable of storing 1,300 vehicles, and described the facility as "basically all a parking lot." (Nov. 18, 2020 Tr. at 23.) Thus, despite the presence of the perimeter fence, the primary purpose of the Chrysler outdoor yard was merely storage of completed inventory. *See Haire* at ¶ 27 (finding that where the primary purpose of an indoor garage was the storage of vehicles, the facility was not a workshop within the meaning of Ohio Adm.Code Chapter 4123:1-5, and emphasizing that the presence of physical boundaries does not mean the commission should ignore the function of the structure or the type of work activities occurring in it).

{¶ 13} Further, we do not agree with the magistrate that Cassens' role in driving the newly manufactured vehicles to the designated zone of the outdoor yard where they would await transport can fairly be construed to be part of the manufacturing process such that the Chrysler outdoor yard can be considered a workshop. " 'An employer should not have to speculate as to whether it falls within the class of employers to whom a specific safety requirement applies.' " *Johnson* at 39-40, quoting *Double* at 17. Here, the vehicles were manufactured and assembled by Chrysler within the confines of a separate indoor facility. The outdoor, fenced-in lot where Ybarra was working for Cassens was a storage lot; it was not "a room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise." *Buurma Farms* at 113.

{¶ 14} The commission placed too much emphasis on the presence of the perimeter fence and did not account for the primary purpose of the outdoor yard. Thus, as there was not some evidence to support a finding that the purpose of the outdoor yard was conducting the type of work that would classify the outdoor yard as a workshop, we find the commission abused its discretion in concluding the Chrysler outdoor yard constituted a workshop within the meaning of Ohio Adm.Code Chapter 4123:1-5. Because the commission abused its discretion in finding the Chrysler outdoor yard to be a workshop, Cassens cannot be found to have committed a VSSR pursuant to Ohio Adm.Code 4123:1-5-13(C)(4).

{¶ 15} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate erred in determining Cassens is not entitled to the requested writ of mandamus. Accordingly, we adopt the magistrate's findings of fact but not the conclusions of law. We therefore sustain Cassens' fourth objection to the magistrate's decision, rendering moot its first, second, and third objections to the magistrate's decision, and we grant Cassens' request for a writ of mandamus.

*Objections sustained in part and moot in part;*
*writ of mandamus granted.*

SADLER, J., concurs.
DORRIAN, J., concurs in part and dissents in part.

DORRIAN, J., concurring in part and dissenting in part.

{¶ 16} I concur in part and dissent in part with the majority.

{¶ 17} I concur because I would grant the request for a writ of mandamus.

{¶ 18} I respectfully dissent, however, because I would grant a *limited* writ only for the purpose of sending this action back to the commission to determine, in the first instance, the type of work activities performed within the Chrysler Group Yard facility and then whether the facility is a workshop for purposes Ohio Adm.Code 4123:1-5-13.

{¶ 19} The majority lays out the framework for analyzing the type of work activities performed within the facility at paragraphs 8-11. The majority then goes on to perform the analysis in the first instance at paragraphs 12-14. I would not perform the analysis, but rather permit the commission to perform the analysis. I would further direct the commission to consider additional guidance we laid out in *State ex rel. Haire v. Indus. Comm.*, 154 Ohio App.3d 82, 2003-Ohio-4570, ¶ 11-12 (10th Dist.):

[F]or the term workshops the courts have recognized the definition outlined in Black's Law Dictionary (4 Ed. Rev. 1968) 1781, as a 'room or place where power driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise.' * * * 'Factory is defined in Webster's New World Dictionary, Second College Edition, as 'a building or buildings in which things are manufactured; manufacturing plant.'

'Utilizing these definitions it is apparent that for a facility to be categorized as a workshop or factory it must be an enclosed structure, or at a [sic] least facility surrounded by a fence, where manual labor is used in conjunction with powered machinery to [1] produce tangible products, or [2] service tangible products, or [3] at least alter (i.e. pack and load) an existing raw product * * *.'

*Id.* at ¶ 11-12, quoting appended magistrate's decision, quoting staff hearing officer's order.

{¶ 20} For these reasons, I concur in part and dissent in part with the majority.

————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cassens Corp., | : | |
| Relator, | : | |
| v. | : | No.  21AP-93 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on March 8, 2022

*Morrow & Meyer, LLC, Corey Crognale,* and *Susan Chae*, for relator.

*Dave Yost,* Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

*Law Office of Carla A. Lombardo LLC,* and *Carla A. Lombardo,* for respondent Luis Ybarra.

IN MANDAMUS

{¶ 21} Relator, Cassens Corp. ("employer"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that found that the employer violated a specific safety requirement ("VSSR").

Findings of Fact:

{¶ 22}  1.  Respondent Luis Ybarra ("claimant") sustained a work-related injury on February 5, 2018, when he was struck by a newly manufactured car being driven by another employee, and his workers' compensation claim was allowed for numerous conditions.

{¶ 23}  2.  On the date of injury, claimant was working as a driver for the employer, which provides transport services for automobile manufacturers, transporting newly manufactured vehicles from the manufacturers' factories to dealerships and sellers. Claimant was working at the outdoor lot of the Chrysler Group Yard in Toledo, Ohio, moving cars from the lot to a staging area, where they would then be loaded onto auto carrier trucks or trains.  The parking lot is enclosed by a fence with guarded gates for entry and exit and not open to the general public. The employer's activities were always performed outside in the yard.

{¶ 24}  3.  After parking a newly manufactured car in the staging area, claimant was walking in the yard to get another car, when he was struck from behind by another newly manufactured car being driven by a coworker.  The car had snow covering its window, and the coworker was navigating by sticking his head out of the window. The coworker did not see claimant or honk his horn. The employer has a work rule requiring drivers to clear snow off the windshields, and the employer subsequently fired claimant's coworker.

{¶ 25}  4.  On September 23, 2019, claimant filed an application for an additional award for VSSR, alleging that the employer had violated Ohio Adm.Code 4123:1-5-13(C)(4), which pertains to cab glass, and (C)(7), which pertains to audible warning devices. Claimant withdrew the latter provision at the hearing.

{¶ 26}  5. Ohio Adm.Code 4123:1-5-13(C)(4), entitled "Motor vehicles, mobile mechanized equipment, and marine operations," provides, in pertinent part:

> (C) General requirements for motor vehicles and mobile mechanized equipment.
>
> * * *
>
> (4) All cab glass shall be safety glass or equivalent with the vision unimpaired by its condition.

{¶ 27} 6. Pursuant to Ohio Adm.Code 4123:1-5-01(A), the specific safety requirement in Ohio Adm.Code 4123:1-5-13(C)(4) applies to "workshops" and "factories."

{¶ 28} 7. On November 18, 2020, the matter was heard before a staff hearing officer ("SHO") for the commission. In a December 24, 2020, order, the SHO granted the VSSR application finding the following: (1) Chrysler's yard perimeter was fenced with gates for entry and exit, which were guarded and not open to unauthorized people; (2) the employer's business operations at the Chrysler yard were always conducted outside in the parking lot within an approximately one-half mile area where vehicles were staged for transport by railcar or carrier truck; (3) the facts are sufficient to classify Chrysler yard as a "workshop," as that term is defined in *State ex rel. Petrie v. Atlas Iron Processors*, 85 Ohio St.3d 372 (1999); therefore, Ohio Adm.Code 4123:1-5-13 is applicable; (4) the employer's argument that the automobile that struck claimant was not a "motor vehicle," as used in Ohio Adm.Code 4123:1-5-13, is unpersuasive; (5) the employer's argument that a motor vehicle is a vehicle that operates offsite and off the highway and Ohio Adm.Code 4123:1-5-13 applies to things such as forklifts, haulers, tow motors, and other mechanized equipment, is unpersuasive; (6) the ordinary meaning of "motor vehicle" includes the vehicle that struck claimant; (7) the employer's argument that Ohio Adm.Code 4123:1-5-13(C)(4) applies only to the condition of the windshield itself, i.e., cracks or defects, and not to snow on top of it, is unpersuasive, because glass can be impaired in ways other than just being cracked, shattered, broken, or otherwise defective, such as a windshield being wrapped with protective plastic; (8) the facts show the condition of the windshield impaired the vision of the employee who drove the car that struck claimant, as he was leaning out of the window while driving and the driver's vision would not have been impaired if the windshield had been cleaned off; (9) the purpose of the rule was to prevent the type of injury suffered; (10) therefore, the employer did not satisfy the specific safety requirement set forth in Ohio Adm.Code 4123:1-5-13(C)(4); and (11) the SHO need not address the employer's argument that it could not be penalized for an employee's negligence, because an employee's negligence is moot when an employer fails to comply with a specific safety requirement. The employer filed a request for rehearing.

{¶ 29} 8. On February 2, 2021, the SHO denied the request for rehearing.

{¶ 30} 9. On March 3, 2021, the employer filed a complaint for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 31} For the reasons that follow, it is this magistrate's decision that this court should not issue a writ of mandamus.

{¶ 32} In order for this court to issue a writ of mandamus, a relator must establish the following three requirements: (1) that relator has a clear legal right to the relief sought; (2) that respondent has a clear legal duty to provide such relief; and (3) that relator has no adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 33} To establish a VSSR, a claimant must prove that: (1) there exists an applicable and specific safety requirement in effect at the time of the injury; (2) the employer failed to comply with the requirements; and (3) the failure to comply was the proximate cause of the injury in question. *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257 (1972).

{¶ 34} The interpretation of a specific safety requirement is within the final jurisdiction of the commission. *State ex rel. Berry v. Indus. Comm.*, 4 Ohio St.3d 193 (1983). However, because a VSSR is a penalty, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989). The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission subject only to the abuse of discretion test. *Trydle*; *State ex rel. A-F Industries, ACME-FAB Div. v. Indus, Comm.*, 26 Ohio St.3d 136 (1986). Furthermore, a safety requirement must be specific enough to plainly apprise an employer of its legal obligations to its employees. *State ex rel. Frank Brown & Sons, Inc. v. Indus, Comm.*, 37 Ohio St.3d 162 (1988).

{¶ 35} In the present matter, the employer first argues that the commission erred and abused its discretion when it found that the Chrysler staging area was a "factory or workshop" within the meaning of Ohio Adm.Code 4123:1-5-13. The employer asserts the Supreme Court of Ohio has consistently held that this section applies only to work inside a factory or workshop, citing *State ex rel. Buurma Farms, Inc. v. Indus. Comm.*, 69 Ohio St.3d 111 (1994); *State ex rel. Double v. Indus. Comm.*, 65 Ohio St.3d 13 (1992); and *State*

*ex rel. Waugh v. Indus. Comm.*, 77 Ohio St.3d 453 (1997). The employer points out that, in the present case, the injuries to claimant occurred in an outdoor staging area. The employer urges that *Petrie*, which the SHO relied on, is distinguishable, because the employer's production operations in *Petrie* occurred within the confines of the outdoor, fenced-in area, while, here, the employer's activity of transporting vehicles to the staging area was only incidental to the manufacture of passenger vehicles, and the vehicles themselves were not a part of the production process.

{¶ 36} The employer's arguments are without merit. *Petrie* has clearly found that the specific safety requirements in Ohio Adm.Code 4123:1-5 may apply to outdoor areas and qualify as "workshops." *See State ex rel. Brammer v. Indus. Comm.*, 10th Dist. No. 10AP-106, 2010-Ohio-4608, ¶ 6 (finding that "workshop," has been defined to include outdoor areas that are fenced in, citing *Petrie*). The cases relied upon by the employer— *Buurma*, *Double*, and *Waugh*—were all cited in the dissenting opinion in *Petrie*, and the majority in *Petrie* chose to reject them. Instead, the court in *Petrie* agreed with the proposition that a "scrapyard's perimeter fencing [i]s a structural enclosure sufficient to classify it as a 'workshop' and render[s] [former] Ohio Adm.Code Chapter 4121:1-5 applicable." *Petrie* at 373 (addressing former Ohio Adm.Code Chapter 4121:1-5, which is akin to current Ohio Adm.Code 4123:1-5). The court in *Petrie* explained that "[t]he fence, in this case, indeed set forth the boundaries of work activity. It also served to keep unauthorized nonemployees out, and, in so doing, established its confines as a place accessible only to employees for the purpose of carrying out the company's business." *Id*. Likewise, in the present case, the fence surrounding the staging area where the injury occurred set forth the boundaries of the manufacturing plant's work activities, kept unauthorized persons out, and set forth a non-public workspace for employees to continue the employer's business.

{¶ 37} The employer's attempt to distinguish *Petrie* from the current case because the employer's actual production operations in *Petrie* occurred within the confines of the outdoor, fenced-in area, while, here, the employer's activity of transporting vehicles within the staging area was only incidental to the manufacture of passenger vehicles, and the vehicles themselves were not a part of the production process, is without merit. Here, the movement and organization of newly manufactured vehicles within the staging area

to organize them for dispatch via railway or carrier truck, as well as the subsequent transporting of the vehicles from the fenced-in staging area, are essential parts of the manufacturing process, albeit the last stages of the process. The vehicles cannot be offered for sale to the public without managing the inventory of the finished vehicles and then moving them from the grounds of the manufacturing plant. Although occurring outside of the physical manufacturing plant, the movement and organization of the vehicles in the outside staging area are no less important tasks to the manufacturing process than the movement of the vehicles inside the plant. Importantly, the employer fails to cite any authority for the proposition that *Petrie* requires that the outdoor workshop be involved in the actual "production" of the product. The one case cited by the employer for this proposition, *State ex rel. Thomas Haire v. Indus. Comm.,* 154 Ohio App.3d 82, 2003-Ohio-4570 (10th Dist.), does not conclude the outdoor area must be part of the "production process." Therefore, there was some evidence in the record to support the commission's conclusion that the Chrysler yard was a "workshop," as that term is defined in *Petrie*, and, therefore, Ohio Adm.Code 4123:1-5-13 is applicable.

{¶ 38} The employer next argues that the commission erred and abused its discretion when it found that Ohio Adm.Code 4123:1-5-13 applies to over-the-highway passenger vehicles manufactured for sale to the public. The employer contends that this section applies only to vehicles used in the production process. The employer asserts that the vehicle that injured claimant in the present case was not a "motor vehicle" or "mobile mechanized equipment" as envisioned by Ohio Adm.Code 4123:1-5-13, and the type of vehicles meant to be subject to Ohio Adm.Code 4123:1-5-13 are those that operate within an off-highway jobsite that is not open to the public, consistent with federal OSHA codes 29 C.F.R. 1910.178(a)(1) (limiting the safety requirements in that section to fire protection, design, maintenance and use of fork trucks, tractors, platform lift trucks, motorized hand trucks, and other specialized industrial trucks, and specifically excluding compressed air or non-flammable compressed gas-operated industrial trucks, farm vehicles, or vehicles intended primarily for earthmoving or over-the-road hauling) and 29 C.F.R. 1926.601(a) (defining motor vehicles as vehicles that operate within an off-highway jobsite, not open to public traffic). The employer also claims it would be absurd to include all motor vehicles present within the confines of the employer's property, as

that would also cover vehicles used by company employees and visitors who park in the company parking lot.

{¶ 39} The employer's argument is without merit. Initially, there can be little argument that the vehicle that struck claimant is not a "motor vehicle," as that term is commonly and plainly defined. There is also no Ohio authority, either case law or within the code section itself, that "motor vehicle," as used in this section, does not apply to over-the-highway vehicles like passenger cars. Thus, the employer's argument starts at a disadvantage. Notwithstanding the plain meaning of the term "motor vehicle" and the lack of any supporting Ohio authority, the employer fails to present a compelling argument that the vehicle that struck claimant is not a "motor vehicle" envisioned by Ohio Adm.Code 4123:1-5-13. The magistrate has already rejected the employer's argument that the operation of the vehicle was not part of the manufacturing process. The management and movement of inventory and its dispatch from the manufacturing plant property can be reasonably deemed part of the manufacturing process. Furthermore, the two federal OSHA codes relied on by the employer, 29 C.F.R. 1910.178(a)(1) and 29 C.F.R. 1926.601(a), do not aid the employer's argument. 29 C.F.R. 1910.178(a)(1) does not address the type of vehicle here or how it was being used in the present case at the time of the injury, and the definition of motor vehicles found in 29 C.F.R. 1926.601(a)—i.e., a vehicle operating on an off-highway jobsite, not open to public traffic—is actually consistent with the description of the vehicle in the present case. Finally, the employer's attempt to find absurdity by analogizing the over-the-highway vehicle here with automobiles being driven by employees operating in a company parking lot is unconvincing. Automobiles being driven by employees and visitors in a company parking lot bear no relation to the manufacturing process, are not being operated within a structural enclosure setting forth the boundaries of work activity, and are not in an area that keeps unauthorized nonemployees out.

{¶ 40} The employer next argues that the commission erred and abused its discretion when it found that the accumulation of snow constituted a visual impairment of the cab glass for purposes of Ohio Adm.Code 4123:1-5-13(C)(4). The employer asserts that a plain reading of that section reveals it applies to the condition of the glass itself, as evidenced by the phrase "its condition."  Thus, the employer contends, there would be a

violation if the glass was cracked or broken, but the temporary accumulation of snow has nothing to do with the condition of the glass itself. However, the employer's narrow definition of "its condition" is not consistent with a "plain" meaning of the phrase. For example, whether the condition of the glass is due to oxidation etched onto its surface or snow resting atop its surface, it can still be reasonably said that vision through the glass in both cases has been impaired "by its condition." The commission read Ohio Adm.Code 4123:1-5-13(C)(4) in this manner, and "[t]he interpretation of a specific safety requirement lies exclusively with the commission." *State ex rel. Internatl. Truck & Engine Corp. v. Indus. Comm.*, 122 Ohio St.3d 428, 2009-Ohio-3502, ¶ 10. Thus, a court must "defer to the commission's expertise in its construction of the safety code unless that construction is shown to be an abuse of discretion" just as we always "defer to an agency's interpretation of its own rule, as long as it is reasonable." *State ex rel. Richmond v. Indus. Comm.*, 139 Ohio St.3d 157, 2014-Ohio-1604, ¶ 25, 28. When the commission has determined that a specific safety requirement does apply to an employer, the employer must show that the commission abused its discretion before a court will issue a writ of mandamus to correct the commission's decision. *See State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St. 3d 202, 204 (1988). In the present case, the magistrate finds no abuse of discretion and defers to the commission's interpretation that accumulated snow is a "condition" of cab glass that impairs vision, as that term is used in Ohio Adm.Code 4123:1-5-13(C)(4).

{¶ 41} Finally, the employer argues that the commission erred and abused its discretion when it improperly held the employer strictly liable for its employee's failure to clear off the snow from his windshield, even though the employee violated a work rule requiring him to clear the windshield and was discharged as a result of his violation. The employer contends that a worker's "unilateral negligence" precludes a finding that the employer violated a specific safety requirement, because there must be some act or omission under the control of the employer to justify a VSSR penalty, and the employer cannot be found strictly liable for the unforeseen negligent acts of its employees, citing *State ex rel. N. Petrochemical Co., Nortech Div. v. Indus. Comm.*, 61 Ohio St.3d 453 (1991), and *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.*, 37 Ohio St.3d 162 (1988). The employer points out that it maintained a work rule requiring employees to

clear their windshields of snow and other visual obstructions, it enforced the rule, and it fired the employee responsible for hitting claimant with his vehicle in this case.

{¶ 42} The employer's argument is without merit. The defense of unilateral negligence by an employee is available to an employer in a VSSR case only if the employer has complied with the specific safety requirement, and the employee has unilaterally violated it. *State ex rel. Byington Builders, Ltd. v. Indus. Comm.*, 156 Ohio St.3d 35, 2018-Ohio-5086, ¶ 39-40. "Because the critical issue in a VSSR claim is always whether the employer complied with the [specific safety requirement], an employee's conduct, even if negligent, is not relevant to a VSSR determination unless the injury is caused by the claimant's deliberate circumvention or disabling of a safety device or refusal to use employer-provided safety equipment." (Citations omitted.) *State ex rel. Sunesis Constr. Co. v. Indus. Comm.*, 152 Ohio St.3d 297, 2018-Ohio-3, ¶ 29. The unilateral negligence defense is viable when an employee "removes or ignores equipment or instruction that complies with a specific safety requirement." *State ex rel. Quality Tower Serv., Inc. v. Indus. Comm.*, 88 Ohio St.3d 190, 193 (2000). It must be kept in mind that specific safety requirements are intended to protect employees from their own negligence, folly, and stupidity, in addition to providing them with a safe working environment. *State ex rel. Blystone v. Indus. Comm.*, 14 Ohio App.3d 238 (10th Dist.1984).

{¶ 43} In the present case, the employer did not initially satisfy the specific safety requirement. The employer did not, in the first instance, satisfy its obligation of providing cab glass with the vision unimpaired by its condition. The glass was covered in snow preceding claimant's injury, and the employer did not provide claimant's coworker with cab glass with unimpaired vision. Importantly, in the cases relied upon by the employer, "the claimant's conduct was the sole cause of his injuries; however, in this case, the claimant did not contribute to his injuries." *State ex rel. Weich Roofing, Inc. v. Indus. Comm.*, 69 Ohio App.3d 281, 285 (10th Dist.1990) (finding that a coworker's switching of the original ladder with safety feet for a replacement ladder without safety feet did not fall under the unilateral negligence rule, and the employer's ultimate responsibility to comply with specific safety regulations and provide a safe working environment does not shift to an employee unless the employer complies with the applicable safety regulations in the first instance and the claimant's unilateral negligence causes the injury). In *Northern*

*Petrochemical*, neither the claimant nor his coworker checked whether a cage was securely attached to a forklift. In *Frank Brown & Sons*, scaffolding collapsed as the result of the claimant's removal of a top cross brace without first installing a corresponding brace beneath.  The employer cites no cases in which the unilateral negligence rule has been applied to the negligent actions of a coworker and the claimant did not in any way contribute to his own injuries. For these reasons, the magistrate finds that the unilateral negligence rule does not apply to preclude the employer's liability for a VSSR.

{¶ 44} Accordingly, it is the magistrate's decision that this court should deny the employer's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).