[THE STATE, EX REL.] MCARTHUR LUMBER & POST CO., INC., APPELLANT,
*v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as State, ex rel. McArthur Lumber & Post Co., *v.* Indus. Comm. (1983),
6 Ohio St. 3d 217.]

(No. 82-404—Decided August 17, 1983.)

*Messrs. Knepper, White, Arter & Hadden* and *Mr. Roger L. Sabo,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. James E. Davidson,* for appellee Industrial Commission.

*Chester T. Freeman Co., L.P.A., Mr. William R. Polhamus* and *Mr. Chester T. Freeman,* for appellee Carl E. Perry.

*Per Curiam.* The issue presented by this appeal is whether the commission abused its discretion in determining that the saw upon which claimant was injured was a rip saw governed by IC-5-06.04 (B). IC-5-06.04 (B) (1) specifies the type of guard required on a manually-fed circular rip saw, and provides, in pertinent part:

"(b) When in Use:

"When in use the hood-type guard shall automatically adjust itself to the thickness of and remain in contact with the material being cut when the stock encounters the saw, or may be [a] fixed or manually adjusted hood or guard provided the space between the bottom of the guard and the material being cut does not exceed three-eights (3/8) inch at any time.

"* * *

"(d) Spreader:

"A spreader shall also be provided and securely fastened at the rear of saw in alignment with saw blade, except where a roller wheel is provided back of saw. The spreader shall be slightly thinner than the saw kerf and slightly thicker than the saw disc, to prevent material from squeezing the saw."

Appellant contends that the saw was a circular cross-cut saw, governed by the guarding requirements set forth in IC-5-06.04 (D) (1) (b) which provides:

"When in use the hood-type guard shall automatically adjust to the thickness of and remain in contact with the material being cut when the stock encounters the saw, or may be a fixed or manually adjusted hood or guard, provided the space between the bottom of the guard and the material being cut does not exceed three-eights (3/8) inch at any time. This requirement shall not apply to circular cross-cut saws with stationary tables where the saw moves forward when cutting." Applying this standard, the saw at issue would fall within the exception noted in the last sentence.

The types of saws are not defined in the regulations. Generally, a rip saw is used to cut wood along the grain, while a cross-cut saw is used to cut wood across the grain. This particular saw was being used to cross-cut six-inch by eight-inch posts at the time of the injury and had always been used to cross-cut posts of various sizes. In light of these facts, appellant first argues that it was an abuse of discretion for the commission to decide that the type of saw is determined by its construction rather than its use. It is well-established, however, that the interpretation of a specific safety requirement is within the sound discretion of the Industrial Commission. *State, ex rel. Allied Wheel Products, Inc.,* v. *Indus. Comm.* (1956), 166 Ohio St. 47, 50 [1 O.O.2d 190];

*State, ex rel. Mees,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 128, 131 [58 O.O.2d 319]; *State, ex rel. Humble,* v. *Mark Concepts, Inc.* (1979), 60 Ohio St. 2d 77, 79 [14 O.O.3d 275]; *State, ex rel. Cox,* v. *Indus. Comm.* (1981), 67 Ohio St. 2d 235, 240 [21 O.O.3d 147]. Upon a review of the regulations involved and the record, we find no basis for a finding that the commission abused its discretion in this regard. Accordingly, we will not set aside the commission's decision that the type of saw is determined by its construction.

However, we find that the commission did not apply the standard it adopted for determining the type of saw involved. Although the commission stated that it based its decision on the construction of the saw, it is evident that the commission relied entirely on the claimant's statement which was limited to a description of the saw blade. The regulations involved contain no provisions concerning the blades of the saws they describe. Accordingly, there is no basis for distinguishing between the types of saws from a description of the blade.

The regulations do impose specific requirements governing the construction of the saws surrounding the blade, however, which differ for the types of saws involved. For instance, IC-5-06.04 (B) (1) (d) requires that a rip saw be equipped with a spreader while no similar device is required on a cross-cut saw. Particularly relevant herein is the fact that the type of guard required on a cross-cut saw depends on the construction of the saw table and the mechanism governing the movement of the saw blade. IC-5-06.04 (D) (1) (b). In view of the nature of these regulations, we find that any determination as to the type of saw involved must be based upon evidence evaluating the construction of the entire saw.

There was evidence before the commission which met this standard, *i.e.,* the investigator's report and the report of the employer's consultant. Neither of these reports, however, would support the order of the commission. We find that the commission's failure to base its decision upon evidence evaluating the construction of the entire saw was an abuse of discretion.

Accordingly, we reverse the judgment of the court of appeals and allow the requested writ.

*Judgment reversed
and writ allowed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

C. BROWN, J., dissents.

J. P. CELEBREZZE, J., not participating.

CLIFFORD F. BROWN, J., dissenting. The *per curiam* opinion correctly frames the issue. It is whether the commission abused its discretion in determining that the saw which injured claimant was a circular rip saw governed

by IC-5-06.04 (B)(1)(b) and (d) or a circular cross-cut saw governed by the guarding requirements set forth in IC-5-06.04 (D)(1)(b).

The claimant, an experienced user of such saws, stated at the hearing that the saw described by photos in the file was a rip saw because of its construction, *i.e.,* the blade had coarse teeth. The dictionary definition in Webster's Third New International Dictionary (1971), at 1960, supports this statement.

The investigator's report, without specifying the foundation therefor, stated "the machine in question was a circular cross-cut saw with a stationary table."

Also in the commission file, stipulated as evidence, are the hearing notes of the hearing officer which read, in part, as follows:

"* * * [claimant] — even though the investigator characterized the saw as a circular cross-cut saw and thus IC-5-06.03 (D)(1)(b) [*sic*] would apply and the last sentence thereof is applicable, the * * * [claimant] states it is a circular rip saw (manual feed) and IC-5-06.04 (B)(1)(b) applies and there is a violation.

"* * *

"The employer used a rip saw to cross-cut and there was not only a violation of IC-5-06.04 (B)(1)(b), as the saw in question was a rip saw regardless of its use and to use a rip saw to cross-cut was in itself a dangerous practice. A 35% award is appropriate."

On this record, the Industrial Commission correctly determined, *inter alia,* in its order of May 21, 1980, as follows:

"That the Commission further finds that the saw in question was a rip saw and not a cross-cut saw even though it was being used to cross cut, as the type of saw is determined by the way it is constructed and not the use that it is put to. * * *"

Upon the foregoing predicate the court of appeals with keen perception determined that a writ should be denied the relator in the following language:

"* * * However, the hearing notes indicate that, at the hearing, claimant himself stated that the saw was a rip saw, rather than a cross-cut saw. Such evidence from claimant, the operator of the saw, would constitute some evidence upon which the commission could predicate its determination. No contention has been made that the hearing notes are inaccurate or that that which is stated therein did not transpire at the hearing.

"* * * In any event, relator has not demonstrated a clear right to the requested writ, in that relator has not demonstrated that there was no evidence before the commission supporting its finding that the saw in question was a rip saw since the hearing notes indicate there was evidence supporting such a finding. * * *"

Actually there was substantial, reliable and probative evidence, beyond the preponderance of evidence standard, to support the commission's finding.

Oddly enough, this court in the *per curiam* opinion recognized correctly that the interpretation of a specific safety requirement is within the sound discretion of the Industrial Commission, citing *State, ex rel. Allied Wheel Products, Inc.,* v. *Indus. Comm.* (1956), 166 Ohio St. 47, 50 [1 O.O.2d 190], and a string of other citations in support, and correctly concluded that it "will not set aside the commission's decision that the type of saw is determined by its construction." Such conclusion means that this court also determines that the saw is a rip saw, and not a cross-cut saw.

Yet, thereafter, this court, through double talk, irrelevant dialogue and convoluted reasoning in the three paragraphs of the opinion preceding the final paragraph, contradicts itself by holding that the commission's finding (that the saw was a rip saw) was an abuse of discretion and allowed the writ. This decision today stands for the proposition that the commission can be right and wrong at the same time about a given matter.[1]

Because there was more than a preponderance of the evidence to support the commission's determination, I would affirm the court of appeals' judgment denying the writ. Therefore, I dissent.

---

[1] The three paragraphs criticized are indicative of the era we are entering. Orwell's *1984* through Newspeak refers to the elegant lettering on the Ministry of Truth edifice of the three slogans of the Party: War is Peace. Freedom is Slavery. Ignorance is Strength.