THE STATE EX REL. SANOR SAWMILL, INC., APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Sanor Sawmill, Inc. v. Indus.
Comm.,* 101 Ohio St.3d 199, 2004-Ohio-718.]

(No. 2003–0960—Submitted December 15, 2003—Decided March 3, 2004.)

**Per Curiam.**

{¶ 1} Appellant Sanor Sawmill's milling process begins with the transfer of logs from a log deck to a log carriage. A single log is positioned and secured to the carriage, and the entire carriage is driven past the saw by a cable. The cable is attached at one end to the carriage and at the other end to a power-driven drum.

{¶ 2} The saw blade is 60 inches in diameter with 33 inches exposed above the saw plate. It spins at 500 rpm and is unguarded. To keep the operator safely away from the blade, the saw is operated from a cab approximately 20 feet away. From the cab, operators can stop and start the saw, operate the log turner, and control carriage speed and direction with hand controls and pedals. There is also a pedal to activate a kicker plate that dislodges jammed wood chips. At Sanor, the kick plate did not always work.

{¶ 3} Appellee-claimant Tony Prendergast was a saw operator at Sanor with a history of approaching the blade to perform various functions without shutting it off. On August 4, 1998, he tried to loosen a small piece of wood that had gotten stuck and was drawn into the moving blade, injuring his hand, arm, and shoulder.

{¶ 4} After his workers' compensation claim was allowed, claimant alleged that Sanor had violated Ohio Adm.Code 4121:1–5–08(D)(2)(a):

{¶ 5} "(2) Circular rip saw (power feed).

{¶ 6} "(a) Guarding.

{¶ 7} "A hood-type guard shall be provided but need not rest upon the table nor upon the material being cut, but shall extend to a line not more than three-eighths of an inch above the plane formed by the bottom of the top feed rolls."

{¶ 8} Before appellee Industrial Commission of Ohio, Sanor asserted that the specific safety requirement was inapplicable. This argument rested on (1) the specific safety requirement's reference to "table" and "feed rolls," neither of which was used with this saw; (2) expert testimony that the safety cab—not hood-type guarding—was the industrial norm; and (3) evidence of the impracticality of a hood-type guard.

{¶ 9} The commission rejected these arguments that the rule was inapplicable, writing:

{¶ 10} "In that it has been found that the saw was a circular saw, being used for ripping, and was fed by powered apparatus (vs. manually) OAC 4121:1–5–08(D)(2)(a) is held to be applicable. Staff Hearing Officer notes that the employer vigorously argues that the mention of 'table' in delineating the level to which such hood needs [to] extend downward and the saw not being equipped with a table PER–SE [sic] creates such an ambiguity as to not place employer upon notice of the guarding requirement, thus rendering OAC 4121:1–5–08(D)(2)(a) inapplicable. Staff Hearing Officer is not persuaded by such argument, finding that the SSR [is] unequivocal in its requirement that a hood-type guard shall be provided, and does not make the provision [of] such guard conditional upon any other element."

{¶ 11} The commission accordingly assessed an additional award for violation of a specific safety requirement ("VSSR"). In seeking a writ of mandamus ordering the commission to vacate its order, Sanor repeated its argument to the Court of Appeals for Franklin County. The court of appeals was not persuaded and denied the writ.

{¶ 12} The cause is now before this court upon an appeal as of right.

{¶ 13} One issue is before us: Does Ohio Adm.Code 4121:1–5–08(D)(2)(a) apply? Upon review, we find that the commission's limited analysis of the applicability issue constituted an abuse of discretion that warrants reversal of the court of appeals.

{¶ 14} Ohio Adm.Code 4121:1–5–08(D)(2)(a) governs "[c]ircular rip saws (power feed)." The code does not define that term, leaving its interpretation to the commission. *State ex rel. Allied Wheel Products, Inc. v. Indus. Comm.* (1956), 166 Ohio St. 47, 1 O.O.2d 190, 139 N.E.2d 41. Because an additional award for a VSSR is, however, a penalty, it requires strict construction of the safety requirement, and "all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer." *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 172, 545 N.E.2d 1216.

{¶ 15} In finding the saw to be properly classified under "Circular rip saws (power feed)," the commission relied on three undisputed facts: (1) the blade was

circular, (2) it cut wood along the grain (see *State ex rel. McArthur Lumber & Post Co. v. Indus. Comm.* [1983], 6 Ohio St.3d 217, 218, 6 OBR 289, 452 N.E.2d 1269), and (3) wood was fed to the saw by powered apparatus.

{¶ 16} Sanor decries this analysis as too narrow, again citing the provision itself:

{¶ 17} "A hood-type guard shall be provided but need not rest upon the *table* nor upon the material being cut, but shall extend to a line not more than three-eighths of an inch above the plane formed by the *bottom of the top feed rolls.*" (Emphasis added.)

{¶ 18} Sanor stresses that the saw apparatus in question has no "table" as contemplated by the provision—a fact seemingly acknowledged in the commission's order but discarded as inconsequential. There is also no evidence in the record of any feed rolls on this machine. It was fed instead by a cable-operated powered carriage.

{¶ 19} Contrary to the commission's analysis, the absence of a table and feed rolls is not immaterial. The guard's placement is determined directly by the feed rolls. Without these rolls there is no point of reference or measurement for the guard. Perhaps this explains the unrebutted statements of three sawmill-industry experts that they had never seen a hood-type guard on this type of saw.

{¶ 20} In *McArthur Lumber & Post Co.*, we held that the commission abused its discretion in classifying a saw based solely on its blade rather than on the construction of the entire saw. There, the commission was confronted with a predecessor code section dealing with manually fed circular saws. The specific safety requirement mandated a guard with the exception that "[t]his requirement shall not apply to circular cross-cut saws with stationary tables where the saw moves forward when cutting."

{¶ 21} The commission found that the saw was a ripsaw, rendering the exemption inapplicable. It based its conclusion exclusively on the fact that the saw blade had the coarse teeth characteristic of ripsaws. It made this finding despite unrebutted evidence that: (1) the saw was at the time of injury—and always had been—used as a crosscut saw and (2) the saw blade moved forward when cutting. The court deemed the commission's finding an abuse of discretion, writing:

{¶ 22} "Although the commission stated that it based its decision on the construction of the saw, it is evident that the commission relied entirely on the claimant's statement which was limited to a description of the saw blade. The regulations involved contain no provisions concerning the blades of the saws they describe. Accordingly, there is no basis for distinguishing between the types of saws from a description of the blade.

{¶ 23} "The regulations do impose specific requirements governing the construction of the saws surrounding the blade, however, which differ for the types of saws involved. For instance, IC–5–06.04(B)(1)(d) requires that a rip saw be equipped with a spreader while no similar device is required on a cross-cut saw. Particularly relevant herein is the fact that the type of guard required on a cross-cut saw depends on the construction of the saw table and the mechanism governing the movement of the saw blade. IC–5–06.04(D)(1)(b). In view of the nature of these regulations, we find that any determination as to the type of saw involved must be based upon evidence evaluating the construction of the entire saw." Id., 6 Ohio St.3d at 219, 6 OBR 289, 452 N.E.2d 1269.

{¶ 24} The commission committed the same error here. Its order did not discuss the absence of feed rolls and dismissed the absence of a table as irrelevant. As in *McArthur Lumber*, the applicability of the requirement of a guard in the case before us depends upon the construction of the saw table and the mechanism governing the movement of the wood to the blade. There is no evidence here of a table or feed rolls. To the contrary, the unrebutted evidence of expert Casey Creamer was that one of the distinctive features of this type of saw is that wood was moved by carriage and not feed rolls.

{¶ 25} A specific safety requirement must plainly apprise an employer of its legal obligation to its employees. *State ex rel. Trydle v. Indus. Comm.* (1972), 32 Ohio St.2d 257, 61 O.O.2d 488, 291 N.E.2d 748. Where the code does not define the relevant apparatus and the cited provision refers to equipment that is not part of the machine in question, it is an abuse of discretion to apply that requirement to the employer.

{¶ 26} The judgment of the court of appeals is hereby reversed. The commission is ordered to vacate its order and issue an order denying an award for VSSR.

Judgment reversed
and writ granted.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

RESNICK and F.E. SWEENEY, JJ., dissent and would affirm the court of appeals.

_____

Roth, Blair, Roberts, Strasfeld & Lodge and Christopher P. Lacich, for appellant.

Jim Petro, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for appellee Industrial Commission.

Podor & Associates and Thomas B. Pyle, for appellee Tony Prendergast.