[Cite as *State ex rel. Strawser v. Indus. Comm.*, 2023-Ohio-4327.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Robert Strawser, | : | |
| Relator, | : | |
| v. | : | No. 22AP-330 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on November 30, 2023

**On brief:** *Knisley Law Offices, Kurt A. Knisley,* and *Daniel S. Knisley,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

**On brief:** *Vorys, Sater, Seymour and Pease LLP, Corrine S. Carman,* and *Alexandra T. Kubala,* for respondent Jay Industries, Inc.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

EDELSTEIN, J.

{¶ 1} This original action was brought by relator, Robert Strawser, for a writ of mandamus compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its March 22, 2022 decision and grant an additional award in his workers' compensation claim against respondent and former employer, Jay Industries, Inc. ("Jay Industries"), for a violation of a specific safety requirement ("VSSR").

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a court magistrate. On June 29, 2023, the magistrate issued a

decision containing findings of fact and conclusions of law, which is appended hereto. Mr. Strawser timely filed objections to the magistrate's decision and both the commission and the employer filed memoranda in opposition. Accordingly, we must independently review the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

## I. Background

{¶ 3} Because Mr. Strawser objects to the magistrate's findings of fact in addition to his conclusions of law, we begin our discussion with a review of the record.

{¶ 4} Mr. Strawser began working as a welder for Jay Industries on October 8, 2018—a job that primarily consisted of assembling grills for tractors. (Oct. 10, 2022 Stipulation of Evidence at 14.) According to Dannie May, the operations manager at Jay Industries, new employees were trained for different jobs within the facility by working with an experienced employee. (*Id.* at 92.) Training on the hydraulic brake press ("the press"), for example, required 40 hours of training—time tracked by the company. (*Id.*) Mr. Strawser testified that, prior to the accident, he had been told by his line manager, Dustin Postell, that he needed to learn how to run the press located in the grill assembly area in order to press his own parts and that any time he was finished for the day, he should "take that time to learn how to run the press." (*Id.* at 33.) Mr. May did not personally oversee this training, but left it to individual supervisors like Mr. Postell. (*Id.* at 93.) Mr. Postell himself had already trained Mr. Strawser on the press on one occasion, which Mr. Strawser described as "just hands-on, shown how to do it." (*Id.* at 35.) During that training, the press was set up in its two-person configuration, and Mr. Postell fed the parts into the machine while Mr. Strawser operated the controls. (*Id.* at 35-36.) Mr. Strawser's co-worker, Wallace Rhein, testified that he was trained the same way on the press when he was a new employee. (*Id.* at 70.)

{¶ 5} On November 6, 2018, Mr. Strawser was formally assigned to weld in the grill assembly area. (*Id.* at 98.) Once he finished his assigned tasks, he approached Mr. Rhein, who was formally assigned to the press that day, and asked whether he could train with him for the remainder of his shift. (*Id.* at 14.) Mr. Strawser testified that on the day of the accident, no one had instructed him to use the remainder of his shift to train on that particular piece of equipment. (*Id.* at 48.)

{¶ 6}   At the time he was approached by Mr. Strawser, Mr. Rhein was fabricating parts on the press in its one-person configuration. (*Id.* at 65.) The press has different fabrication capabilities, depending on which dies are used and how the machine is set up. One configuration is referred to in the record as the "one-person" operation or the "two-metal part" process. (*Id.* at 16-17.) To use the press in this one-person configuration, the operator inserts pieces of steel mesh that are clamped in place on either side of the press. (*Id.* at 14, 16.) The operator who inserted the metal pieces then presses two buttons simultaneously on the two-hand control device to initiate the operating cycle and activate the dies, which bend the metal pieces into the desired shape. (*Id.* at 14, 41.) The other configuration relevant to our discussion is referred to in the record as the "two-person" operation or the "one-metal part" process. That set-up requires a second individual to hold a piece of metal in the press while the primary operator pushes the two-palm button control to activate the dies and bend the part. A second employee is needed to hold the metal in place because this process does not utilize a clamp. (*Id.* at 14, 17, 112-13.)

{¶ 7}   Mr. Postell testified that this particular press is not exclusively used as a "one-operator machine," but at the time of the accident, it was configured for only one operator. (*Id.* at 96.) Prior to the date of the accident, Mr. Strawser's only experience with the press was in its two-person configuration under Mr. Postell's training. (*Id.* at 112-13.)

{¶ 8}   It is uncontroverted that on the day of the accident, the press was set up in its "one-person" configuration with two dies. (*Id.* at 14.) Mr. Strawser testified that Mr. Rhein agreed to train Mr. Strawser on the press and instructed him to insert metal pieces into the left side while he loaded the right. (*Id.* at 39.) Once the parts were in place, Mr. Rhein walked to the podium and pressed the two buttons to initiate the bending process. (*Id.* at 40.) Mr. Rhein and Mr. Strawser completed several cycles without issue. (*Id.*) However, on a subsequent cycle, unaware that Mr. Strawser was still inserting a part, Mr. Rhein placed both hands on the podium buttons and activated the machine. (*Id.* at 15, 121.) Mr. Rhein engaged the emergency stop once he realized what had happened, but not before Mr. Strawser's left hand was crushed in the press, resulting in the full amputation of three fingers and partial amputation of a fourth. (*Id.* at 15; June 7, 2022 Compl. at 3.)

{¶ 9}   Following allowance of his workers' compensation claim, Mr. Strawser applied for an additional award, alleging Jay Industries violated Ohio Adm.Code 4123:1-5-

11(E) at the worksite.[1]   This specific safety rule requires that hydraulic presses are constructed or guarded "to prevent the hands or fingers of the operator from entering the danger zone during the operating cycle." Ohio Adm.Code 4123:1-5-11(E).  A hearing on Mr. Strawser's VSSR application was held on January 24, 2022.  (Compl. at 3.)  On March 22, 2022, a staff hearing officer ("SHO") for the commission issued an order denying the application.

{¶ 10} In its decision, the SHO concluded that Ohio Adm.Code 4123:1-5-11(E) "does not specify that the guarding is to prevent injury to *all* persons, just the *operator*." (Emphasis added.)   (Stipulation of Evidence at 16.)   Ultimately, the SHO applied the definition of "operator" found in Ohio Adm.Code 4123:1-5-01(B)(92)—an employee who is "assigned or authorized to work at the specific equipment"—and concluded that Mr. Strawser "was not an operator of the press" at the time of his injury.  (*Id.*)

{¶ 11} From the hearing testimony of Mr. Strawser, Mr. Rhein, Mr. May, and Mr. Postell, the SHO first concluded that Mr. Strawser was not **assigned** to the press on the day of the injury and then concluded he was not **authorized** to work the press as well.  The SHO found as follows:

> As to whether he was assigned the job, the [SHO] finds the evidence supports the finding the Injured Worker was not given any assignment on the date of the injury to run the press. According to both Mr. Rhein and Mr. Postell, only the employee assigned to the press is permitted to operate/push the palm buttons. It was the testimony of Mr. Rhein that on the date of injury he was the only person assigned to run the press. This testimony is corroborated by Mr. Postell, as he stated on the date of injury Mr. Rhein was assigned to operate the press. Furthermore, there was testimony from Mr. Rhein and Mr. Postell that no one had assigned the Injured Worker to assist or help Mr. Rhein operate the press on the date of injury. The Injured Worker admitted during his testimony that no one instructed him that day to help Mr. Rhein run the press. Mr. Postell explained that if a worker completes his work for the day and is to help another worker, that worker is to check with him for an assignment and that did not take place on the date of injury. Given this testimony, the [SHO] concludes the Injured Worker was not assigned to run the press on the date of the injury. As the Injured Worker had not yet been trained to work the

---

[1] Mr. Strawser initially alleged a violation of Ohio Adm.Code 4123:1-5-11(A)(2)(b), which he voluntarily dismissed at the commission hearing on January 24, 2022. (Stipulation of Evidence at 15.)

> press for the one-person process, the [SHO] further concludes the Injured Worker was not yet authorized to run the press in question.

(Internal citations omitted.) (*Id.* at 17.)

{¶ 12} The SHO further found that the two-palm button control was one of the acceptable methods of guarding listed in Ohio Adm.Code 4123:1-5-11(E), and thus Jay Industries complied with the applicable safety regulation. (*Id.* at 18.) Accordingly, the VSSR application was denied. Mr. Strawser filed a motion for reconsideration, which the commission denied on May 18, 2022. (Compl. at 4.)

{¶ 13} This petition for a writ of mandamus followed. On June 29, 2023, the assigned magistrate issued a decision concluding the commission did not abuse its discretion in finding that the relevant safety requirement in Ohio Adm.Code 4123:1-5-11(E) only applied to operators and Mr. Strawser was not an operator under the definition provided in Ohio Adm.Code 4123:1-5-01(B)(92). The magistrate recommended we deny the writ.

{¶ 14} On July 11, 2023, Mr. Strawser submitted objections to the magistrate's decision. While no specific objections were identified, we surmise from the brief that Mr. Strawser contests the magistrate's characterization of certain facts in the record and the recitation of applicable law—errors Mr. Strawser believes resulted in an erroneous determination that he was not an "operator" at the time of the accident. (July 11, 2023 Objs. to Mag.'s Dec.)

## II.  Applicable Law
### A.  Legal Standards

{¶ 15} To be entitled to a writ of mandamus, Mr. Strawser must be able to establish he has a clear legal right to the relief sought, the commission has a clear legal duty to provide such relief, and he has no adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 162-63 (1967).

{¶ 16} "The interpretation of a specific safety requirement is within the final jurisdiction of the commission and may be corrected in mandamus only upon a showing that the commission abused its discretion." *State ex rel. Precision Steel Servs. v. Indus. Comm.*, 145 Ohio St.3d 76, 2015-Ohio-4798, ¶ 21. The commission abuses its discretion if

there is no evidence in the record to support its finding, whereas an order supported by some evidence will not be disturbed. *State ex rel. Keck v. Indus. Comm.*, 10th Dist. No. 20AP-314, 2022-Ohio-2782, ¶ 6. "The presence of contrary evidence is not dispositive, so long as the 'some evidence' standard has been met." (Internal citations omitted.) *State ex rel. Jeld-Wen, Inc. v. Indus. Comm.*, 10th Dist. No. 21AP-357, 2023-Ohio-2593, ¶ 6.

{¶ 17} R.C. 4121.13 authorizes the Bureau of Workers' Compensation to promulgate industry-specific safety standards. The purpose of these specific safety requirements is to provide "*reasonable*, not absolute, safety for employees." (Emphasis sic.) *State ex rel. Jeep Corp. v. Indus. Comm.*, 42 Ohio St.3d 83, 84 (1989).

{¶ 18} "To be entitled to an additional award for a VSSR, a claimant must show that (1) a specific safety requirement applied, (2) the employer violated that requirement, and (3) the employer's violation caused the injury." *Precision Steel Servs.* at ¶ 15. A VSSR award is a penalty against the employer. Because it is considered a penalty, "[a] specific safety requirement must plainly apprise an employer of its legal obligation to its employees." *State ex rel. Sanor Sawmill, Inc. v. Indus. Comm.,* 101 Ohio St.3d 199, 2004-Ohio-718, ¶ 25. Furthermore, a safety standard "must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer." (Internal citations omitted.) *State ex rel. Cassens Corp. v. Indus. Comm.*, 10th Dist. No. 21AP-93, 2022-Ohio-2936, ¶ 7. However, "the application of the strict-construction rule cannot justify an illogical result or one that is contrary to the clear intention of the code." *State ex rel. Pennant Moldings, Inc. v. Indus. Comm.*, 10th Dist. No. 11AP-942, 2013-Ohio-3259, ¶ 16, citing *State ex rel. Maghie & Savage, Inc. v. Nobel*, 81 Ohio St.3d 328, 331 (1998). The commission's interpretation of its own safety rules must be reasonable in order to have all doubts construed in favor of the employer. *See State ex rel. Martin Painting & Coating Co. v. Indus. Comm.,* 78 Ohio St.3d 333, 342 (1997).

**B. Relevant Safety Regulations**

{¶ 19} Ohio Adm.Code 4123:1-5-11(E) mandates that hydraulic presses "will be constructed, or will be guarded, to prevent the hands or fingers of the operator from entering the danger zone during the operating cycle." "Guarded" means the press is covered, fenced, railed, enclosed, or otherwise shielded from accidental contact. Ohio

Adm.Code 4123:1-5-01(B)(70). The "danger zone" is defined as "the point of operation where a known hazard exists." Ohio Adm.Code 4123:1-5-01(B)(34). The "point of operation" is the area where material is actually positioned and work is being performed. Ohio Adm.Code 4123:1-5-01(B)(97). The commission has set forth certain methods of guarding that comply with 4123:1-5-11(E)'s mandate. One such method is the use of a two-hand control to activate the press. Ohio Adm.Code 4123:1-5-11(E)(3). "A two-hand control or tripping device is commonly composed of two separately placed buttons located outside the danger zone, which require continuous simultaneous depression by each hand to cycle the press." *State ex rel. Advanced Metal Precision Prods. v. Indus. Comm.*, 111 Ohio St.3d 109, 2006-Ohio-5336, ¶ 15.

{¶ 20} In the context of hydraulic presses, the term "operating cycle" has been judicially defined to encompass "all operator-activated press activity, whether intentional or accidental." *Advanced Metal Precision Prods.* at ¶ 20. A successful VSSR applicant must therefore be an "operator" of the machine to trigger 4123:1-5-11(E)'s protections. An operator is defined in statute as "any employee ***assigned*** or ***authorized*** to work at the specific equipment." (Emphasis added.) Ohio Adm.Code 4123:1-5-01(B)(92).

{¶ 21} Thus, Ohio Adm.Code 4123:1-5-11(E) requires that every hydraulic press be set up to prevent (1) an operator of the machine from (2) having accidental contact (3) with a known hazard (4) at areas where material is positioned and work is being performed (5) during all operator-activated press activity.

## III. Analysis

{¶ 22} Mr. Strawser contends the commission and the magistrate erred in finding he was not an "operator." (Objs. to Mag.'s Dec. at 8.) It is undisputed that Mr. Strawser did not have a formal assignment to work the press that day and therefore was not ***assigned*** to it under the statutory definition of operator; accordingly, our analysis is limited to whether Mr. Strawser was ***authorized*** to operate the press on the day in question. (*See* Mag.'s Dec. at 9.) Respondents asserted below that "since [Mr. Strawser] had not been trained on the process, he was not authorized to help run the press despite being generally instructed he was to learn how to do other jobs." (Stipulation of Evidence at 17.)

{¶ 23} Citing the testimony of Mr. Strawser, Mr. Rhein, and Mr. Postell, the SHO found the following facts determinative of whether Mr. Strawser was authorized to use the press at the time of his injury: all employees assigned to work in grill assembly were expected to learn how to do all of the relevant tasks, including running the press (*Id.* at 16); Mr. Postell expected Mr. Strawser to learn how to press his own parts (*Id.*); Mr. Postell had previously trained Mr. Strawser on that exact press when it was configured as a two-person operation (*Id.* at 17); Mr. Rhein had never trained Mr. Strawser on that press before but had trained him with other tasks (*Id.* at 16); on the day of the accident, Mr. Rhein was the only person assigned to operate the press (*Id.* at 17); on the day of the accident, the press was configured as a one-person operation (*Id.*); when the press is set up in that configuration, it is always a one person job (*Id.*); and Mr. Strawser had not been trained on the press in the one-person configuration (*Id.* at 16).

{¶ 24} From this evidence, the SHO reasoned, "As the Injured Worker had not yet been trained to work the press for the one-person process, * * * the Injured Worker was not yet authorized to run the press in question." (*Id.* at 17.) The magistrate agreed with this analysis: "While relator may have been actively involved in the machine's operation at the time of the injury, this alone is not sufficient to satisfy the definition of operator in Ohio Adm.Code 4123: 1-5-01(B)(92) as such active involvement is not determinative of whether relator was assigned or authorized to work at the press." (Mag.'s Dec. at 9.) Stated otherwise, both the SHO and the magistrate concluded that Mr. Strawser could not have been assigned or authorized to operate the press when the accident took place.

{¶ 25} Neither "assigned" nor "authorized" is defined in Ohio Adm.Code 4123:1-5-01. Because the commission's specific safety rules have the effect of legislative enactments, we apply the ordinary rules of statutory construction and construe undefined words in accordance with their plain meaning. *State ex rel. Byington Builders, Ltd. v. Indus. Comm.*, 156 Ohio St.3d 35, 2018-Ohio-5086, ¶ 23, quoting *State ex rel. Parks v. Indus. Comm.*, 85 Ohio St.3d 22, 25 (1999). In addition, we must give effect to both "assigned" and "authorized" in the provided definition of operator. *See Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 19 ("When interpreting a statute, a court must give effect to every word and phrase in the statute."). Therefore, we

consider "assigned" and  "authorized" to be distinct terms that must each be defined by their ordinary meaning.

{¶ 26} That Mr. Strawser did not receive a specific assignment from Mr. Postell to work the press on the day he was injured is not "some evidence" that Mr. Strawser was not ***authorized*** to operate the press.  Instead, it is "some evidence" that Mr. Strawser was not ***assigned*** to that particular press on the day of the injury, a point not contested by any of the parties.

{¶ 27} With respect to Mr. Strawser's authorization to run the press on the date of his injury, the SHO stated, "As the Injured Worker had not yet been trained to work the press for the one-person process, the [SHO] further concludes the Injured Worker was not yet authorized to run the press in question." (Stipulation of Evidence at 17.)

{¶ 28}  The record provides some evidence to support that conclusion.  On the day of the accident, Mr. Rhein was assigned to the press—not Mr. Strawser. And at that time, the press was set up in its one-person configuration so that only one person could operate the machine.  Because of this, we agree with the outcome reached by the SHO and this court's magistrate.  The record contains evidence that only one operator may operate the press when it is set up in the one-person configuration.  Although Mr. Rhein testified it was not uncommon for other employees to informally assist him when he used the press in its one-person configuration, the record also contains Mr. Postell's testimony that "[t]hose particular dies have always been a one-person job. Always." (*Id.* at 95.)  Mr. Postell instructed Mr. Strawser to learn how to operate the press and trained Mr. Strawser in the two-person configuration, but he never instructed Mr. Strawser to learn how to operate the press "as a two-person operation when it's [configured for] a one-person operation." (*Id.* at 101.)

{¶ 29} On the day of Mr. Strawser's injury, Mr. Rhein had been operating the press in its one-person configuration by loading the parts on the left and right sides of the press and then returning to the podium to activate the two-palm control. (*Id.* at 79-81.)  When Mr. Strawser joined, Mr. Rhein did not switch tasks or adjust the configuration, but instead instructed Mr. Strawser to load parts on one side of the machine while he loaded the other. (*Id.* at 79-81, 121.) This division of labor saved time, but it did not transform the job into a two-person operation.

{¶ 30} Even if the steps required to operate the press in that configuration could be divided between two employees, and even if the press required two operators when used in other ways, there is some evidence in the record to support the SHO's conclusion that Mr. Strawser was not authorized to operate the machine in its one-person configuration when Mr. Rhein was already the assigned operator. The evidence that this may have been a routine practice does not negate the other evidence in the record that it was an unauthorized one. *See, e.g., Jeld-Wen*, 2023-Ohio-2593 at ¶ 6 ("The presence of contrary evidence is not dispositive, so long as the 'some evidence' standard has been met."). Because the record supports a finding that only Mr. Rhein was assigned (and thus authorized) to operate the press in its one-person configuration on the day of the injury, we concur that Mr. Strawser could not have been an "operator" as defined by Ohio Adm.Code 4123:1-5-01(B)(92).

{¶ 31} As there is some evidence to support the SHO's finding that Mr. Strawser was not authorized to operate the press and therefore could not qualify as an operator at the time of his injury, we conclude the commission did not abuse its discretion in denying the VSSR and overrule Mr. Strawser's objections to the magistrate's decision.

## IV. Disposition

{¶ 32} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate did not err in determining Mr. Strawser is not entitled to the requested writ of mandamus. Having overruled Mr. Strawser's objections, we adopt the decision of the magistrate and deny the requested writ of mandamus.

*Objections overruled*;
*writ of mandamus denied.*

LUPER SCHUSTER and LELAND, JJ., concur.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Robert Strawser, | : | |
| Relator, | : | |
| v. | : | No. 22AP-330 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 29, 2023

*Knisley Law Offices, Kurt A. Knisley,* and *Daniel S. Knisley,* for relator.

*Dave Yost,* Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

*Vorys, Sater, Seymour and Pease LLP, Corrine S. Carman,* and *Alexandra T. Kubala,* for respondent Jay Industries, Inc.

IN MANDAMUS

{¶ 33} Relator Robert Strawser seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order finding that respondent Jay Industries, Inc. ("Jay Industries") did not commit a violation of a specific safety requirement ("VSSR").

**I. Findings of Fact**

{¶ 34} 1. Relator was employed by Spherion of Mid-Ohio ("Spherion"), a staffing agency. Spherion assigned relator to work at Jay Industries, where he was tasked as a

welder in the grille fabrication department. On November 6, 2018, four weeks and two days after beginning to work at Jay Industries, relator finished his assigned welding tasks with approximately 30 to 35 minutes remaining in his shift. Relator asked Wallace Rhein, a worker assigned to operate a hydraulic press brake ("press"), if relator could help Rhein with the press, which was used to bend parts in the grille fabrication department. Shortly afterward, relator sustained a serious injury to his left hand when Rhein activated the press while relator's hand was inside.

{¶ 35} 2. In the first report of injury, occupational disease or death form ("FROI-1") filed with the Bureau of Workers' Compensation ("bureau"), the incident resulting in relator's injury was described as "using a press [and] a button was pushed [and] the press came down on his left hand, crushing it, [and] taking fingers off." (R. 11.)

{¶ 36} 3. Relator's workers' compensation claim was allowed for the following: complete traumatic transphalangeal amputation left third finger; complete traumatic transphalangeal amputation left fifth finger; partial traumatic transphalangeal amputation left second finger; complete traumatic transphalangeal amputation left fourth finger; crushing injury left hand; ankylosis at distal interphalangeal joint left second finger. (R. 14.)

{¶ 37} 4. Relator filed an application for additional award for violation of specific safety requirement in a workers' compensation claim ("IC-8/9"). Relator listed violations of (1) Ohio Adm.Code 4123:1-5-11(A)(2)(b) and (2) Ohio Adm.Code 4123:1-5-11(E). (R. 22.)

{¶ 38} 5. The bureau's Safety Violations Investigations Unit released a report of investigation dated July 23, 2020. (R. 138.)

{¶ 39} 6. A commission staff hearing officer ("SHO") conducted a hearing on the application for VSSR award on January 24, 2022 and issued an interlocutory advisement order pending receipt of the hearing transcript on January 28, 2022.

{¶ 40} 7. At the hearing, relator testified that in the week prior to his injury, he had been instructed to learn how to run the press at which he was injured so he could press his own parts for the grilles, and that he was to learn how to run the press after completing his other tasks during the day.

{¶ 41} 8. Rhein testified at the hearing that he was the only person assigned by Dustin Postell, line leader at Jay Industries, to operate the press on the day of the injury. According to Rhein, no one from Jay Industries informed him that relator was assigned or authorized to help him on that day. Rhein had never helped train relator on the press prior to the day of the injury. Following relator's injury, Rhein received a written warning for unsafely operating the press.

{¶ 42} 9. Dannie May, operations manager at Jay Industries, testified at the hearing that relator was not instructed or authorized to be an operator of the press at issue on the day of the injury. According to May, Rhein was assigned to operate the press on that day. May testified that the press was equipped with a palm podium which required the pressing of both buttons with two hands in order to activate the press. The podium was located away from the danger zone.

{¶ 43} 10. At the hearing, Postell testified that the press was equipped with a podium located away from the danger zone of the press and that the podium required two hands to activate the press. Postell testified that the press could be used as either a two-person operation or a one-person operation depending on the job in question. According to Postell, the press was configured to be a one-person operation on the day of the injury. The particular job that was being performed on the press on the day in question did not require someone to hold the parts in the press while it was in operation. Postell admitted telling relator that he would need to learn to run the press, "but not as a two-person operation when it's a one-person operation." (R. 101.) Postell testified that relator would have been required to complete 40 hours of training before he could perform the single-operator task on the press. Prior to the date of the injury, Postell had shown relator how the press operated in a two-person operation, but relator had not completed the training required to operate the press. Postell answered in the negative when asked: "[W]ere any of those hours training him to be a single operator on the brake press, the times that you worked with him before * * * his accident?" (R. 111.)

{¶ 44} Postell stated that relator did not follow standard operating procedure by volunteering to help Rhein with the press. Specifically, Postell stated: "[W]hen my workers have downtime, they come to me and I advise them what to do. [Relator] did not come to me that day. He took it upon himself and walked over there and started helping

[Rhein].” (R. 107.) Postell stated that relator did not have authorization to assist with the press on the day of the injury. According to Postell, Rhein alone was assigned to operate the press and that no one else was allowed to push the buttons to activate the press.

{¶ 45} 11. On March 26, 2022, the SHO issued an order denying relator's application for VSSR award. The SHO found that relator dismissed the alleged violation of Ohio Adm.Code 4123:1-5-11(A)(2)(b) because such section did not exist and found there was no dispute that Ohio Adm.Code 4123:1-5-11(E) applied because relator was working on a hydraulic press when he was injured. In support of the order, the SHO made the following findings: (a) while there was an environment of teamwork associated with the grille fabrication process, relator was not an operator within the meaning of Ohio Adm.Code 4123:1-5-11(E) on the date of the injury; (b) relator was not given any assignment on the date of the injury to run the press; (c) because relator had not been trained to work the press for the one-person process, he was not authorized to run the press; (d) the two-palm button control on the press is equivalent to the two-hand control process detailed in Ohio Adm.Code 4123:1-5-11(E)(3); (e) on the date of the injury, Jay Industries complied with the requirements of Ohio Adm.Code 4123:1-5-11(E); (f) the proximate cause of relator's injury was not a violation of Ohio Adm.Code 4123:1-5-11(E); (g) on the date of the injury, Jay Industries was in compliance with the requirements of Ohio Adm.Code 4123:1-5-11(E) because there was a proper guarding mechanism in place to protect the operator's hands from entering the danger zone. The SHO also stated that “[i]t appears this was an accident caused by human error, a situation that was not specifically covered in the safety rule cited by [relator].” (R. 18.)

{¶ 46} 12. Relator filed a motion for rehearing with the commission on April 8, 2022. In an order dated May 20, 2022, relator's motion for rehearing was denied.

{¶ 47} 13. Relator filed a complaint in mandamus in the instant case on June 7, 2022.

{¶ 48} 14. On October 10, 2022, relator filed a motion to consider supplemental certified record pursuant to Loc.R. 13(G).

{¶ 49} 15. Jay Industries filed a response in opposition to relator's motion to consider supplemental certified record on October 18, 2022.

## II. Discussion and Conclusions of Law

{¶ 50} Relator asserts entitlement to a writ of mandamus on the basis that the commission erred in denying his VSSR claim.

## A. Law Applicable to Violations of Specific Safety Requirements

{¶ 51} Article II, Section 35 of the Ohio Constitution provides the commission with authority to determine VSSR claims, providing in pertinent part:

> For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. * * * Such board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employ[e]es, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final.

R.C. Chapter 4121 "reflects this constitutional provision of authority and addresses VSSR violations." *Zarbana Industries v. Hayes*, 10th Dist. No. 18AP-104, 2018-Ohio-4965, ¶ 17. R.C. 4121.47(A) provides that "[n]o employer shall violate a specific safety rule adopted by the administrator of workers' compensation pursuant to [R.C. 4121.13] or an act of the general assembly to protect the lives, health, and safety of employees pursuant to [Ohio Constitution, Article II, Section 35]." A specific safety requirement is one that is (1) enacted either by the General Assembly or through an order of the Industrial Commission; (2) is specific, not general; and (3) is made for the protection of the lives, health, or safety of employees. *State ex rel. Cotterman v. St. Mary's Foundry*, 46 Ohio St.3d 42, 44 (1989), citing *State ex rel. Trydle, v. Indus. Comm.*, 32 Ohio St.2d 257 (1972), paragraph one of the syllabus.

{¶ 52} "A 'specific requirement' is more than a general course of conduct or general duty or obligation flowing from the employer-employee relationship; rather, it 'embraces such lawful, specific and definite requirements or standards of conduct * * * [that] are of a character plainly to apprise an employer of his legal obligation toward his employees.' "

*State ex rel. Precision Steel Servs. v. Indus. Comm. of Ohio*, 145 Ohio St.3d 76, 2015-Ohio-4798, ¶ 17, quoting *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257, paragraph one of the syllabus. Specific safety requirements "must 'forewarn the employer and establish a standard which [the employer] may follow.' " *State ex rel. G & S Metal Prods. v. Moore*, 79 Ohio St.3d 471, 476 (1997), quoting *State ex rel. Howard Eng. & Mfg. Co. v. Indus. Comm.*, 148 Ohio St. 165 (1947), paragraph one of the syllabus. "[S]pecific safety requirements are ' "intended to protect employees against their own negligence and folly as well as to provide them a safe place to work." ' " *State ex rel. Byington Builders, Ltd. v. Indus. Comm. of Ohio*, 156 Ohio St.3d 35, 2018-Ohio-5086, ¶ 40, quoting *Cotterman* at 47, quoting *State ex rel. U.S. Steel Corp. v. Cook*, 10 Ohio App.3d 183, 186 (10th Dist.1983). Thus, a "VSSR award is intended to penalize employers for failing to comply with [specific safety requirements], and only those acts within the employer's control should serve as the basis for establishing a VSSR." *State ex rel. Ohio Paperboard v. Indus. Comm. of Ohio*, 152 Ohio St.3d 155, 2017-Ohio-9233, ¶ 20.

{¶ 53} "An award for a VSSR is 'a new, separate, and distinct award' over and above standard workers' compensation benefits. It is not covered by an employer's workers' compensation premium." *State ex rel. Precision Steel Servs. v. Indus. Comm. of Ohio*, 145 Ohio St.3d 76, 2015-Ohio-4798, ¶ 15, quoting *State ex rel. Newman v. Indus. Comm.*, 77 Ohio St.3d 271, 272 (1997). In order to prove a VSSR claim, a claimant must establish that (1) an applicable and specific safety requirement was in effect at the time the injury occurred, (2) the employer failed to comply with the requirement, and (3) the failure to comply was the proximate cause of the injury in question. *State ex rel. Scott v. Indus. Comm. of Ohio*, 136 Ohio St.3d 92, 2013-Ohio-2445, ¶ 11.

{¶ 54} "Because a VSSR award is a penalty, a specific safety requirement must be strictly construed and all reasonable doubts concerning the interpretation must be resolved in favor of the employer." *State ex rel. 31, Inc. v. Indus. Comm.*, 152 Ohio St.3d 350, 2017-Ohio-9112, ¶ 21, citing *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172 (1989). However, "the strict-construction rule does not apply in resolving factual disputes," and such rule "permits neither the commission nor a reviewing court to construe the *evidence* of a VSSR strictly in the employer's favor." (Emphasis sic.) *State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.*, 98 Ohio St.3d 134, 2002-Ohio-7089, ¶ 70.

## B. Requirements for Mandamus

{¶ 55} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). In order to prevail in a mandamus action seeking to vacate a factual determination of the commission in granting or denying a VSSR award, the relator must demonstrate that the commission's decision was an abuse of discretion. *State ex rel. Armstrong Steel Erectors, Inc. v. Indus. Comm.*, 144 Ohio St.3d 243, 2015-Ohio-4525, ¶ 13. Where the commission's factual determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 56} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West. v. Indus. Comm.*, 74 Ohio St.3d 354, 356 (1996), citing *Burley*.

## C. Application

{¶ 57} Ohio Adm.Code Chapter 4123:1-5 sets forth specific safety requirements relating to workshop and factory safety. *See* Ohio Adm.Code 4123:1-5-01(A). In his application for additional award for VSSR, relator alleged a violation of Ohio Adm.Code 4123:1-5-11(E),[2] which provides as follows:

> Hydraulic or pneumatic presses.
>
> Every hydraulic or pneumatic (air-powered) press shall be constructed, or shall be guarded, to prevent the hands or

---

[2] It is undisputed that relator's initial allegation of a violation of Ohio Adm.Code 4123:1-5-11(A)(2)(b) is not at issue in the present matter because relator dismissed that alleged violation at the January 24, 2022 hearing. (R. 116.)

fingers of the operator from entering the danger zone during the operating cycle. Acceptable methods of guarding are:

(1) "Fixed barrier guard" - an enclosure to prevent hands or fingers from entering the danger zone;

(2) "Gate guard" - a movable gate operated with a tripping device to interpose a barrier between the operator and the danger zone and to remain closed until the down stroke has been completed;

(3) "Two-hand control" - an actuating device which requires the simultaneous use of both hands outside the danger zone during the entire closing cycle of the press;

(4) Pull guard - attached to hands or wrists and activated by closing of press so that movement of the ram will pull the operator's hands from the danger zone during the operating cycle;

(5) Restraint or hold-back guard - with attachments to the hands or wrists of the operator to prevent hands or fingers entering the danger zone during the operating cycle;

(6) Other practices, means or methods which will provide safeguards, preventing the hands or fingers of the operator from entering the danger zone during the operating cycle and which are equivalent in result to one of the types specified above.

The term "operator" is defined in Ohio Adm.Code 4123:1-5-01(B)(92) as "any employee assigned or authorized to work at the specific equipment."

{¶ 58} Relator asserts the commission abused its discretion in denying his application for VSSR award for two reasons. First, relator asserts the commission erred in determining that relator failed to meet the definition of operator. Specifically, relator contends the commission's construction of the term "operator" is overly narrow, arguing that the Supreme Court of Ohio in *State ex rel. Scott Fetzer Co. v. Indus. Comm. of Ohio*, 81 Ohio St.3d 462 (1998), has construed the term more broadly "to include any individual 'actively involved in the machine's operation.' " (Relator's Brief at 8, quoting *Fetzer* at 466.)

{¶ 59} In *Fetzer*, the court found that the employer "assigned its employee, [the] claimant * * * to its number 38 die cast machine." *Id.* at 462. The employer argued that the claimant was not entitled to the protection of the specific safety requirement at issue

because the claimant "was the 'tender,' not the 'operator' of the machine." *Id.* at 466. The court concluded that this contention failed because "[r]egardless of what [the employer] chose to call claimant, he was actively involved in the machine's operation. Claimant started, inspected, and cleaned the die. He operated the linkage mechanism and set die heights. He oiled the die and checked for defective parts. He was responsible for lodged parts and correcting malfunctions. He was not, therefore, a casual observer with no responsibility for or participation in the machine's function." *Id.*

{¶ 60} Relator also cites to *State ex rel. Gerstenslager Co. v. Wilson*, 10th Dist. No. 06AP-512, 2007-Ohio-2657, arguing that this court has previously qualified claimants as operators when they sustain injuries in the course of training on a press. In *Gerstenslager*, the assigned magistrate noted the commission's finding that the claimant was "assigned and authorized" by the claimant's supervisor to train another employee on the specific equipment at issue. *Id.* at ¶ 14. The court granted a writ of mandamus because the SHO failed to set forth a brief explanation supported by some evidence to support a finding that the injury occurred during the operating cycle.

{¶ 61} In both *Fetzer* and *Gerstenslager*, the claimant was explicitly found to be assigned to the equipment at issue. The courts in those cases did not consider a dispute as to whether the claimant was assigned or authorized within the meaning of Ohio Adm.Code 4123:1-5-01(B)(92). Thus, those cases differ from the present matter in which the parties dispute whether relator was assigned or authorized to work at the press. While relator may have been actively involved in the machine's operation at the time of the injury, this alone is not sufficient to satisfy the definition of operator in Ohio Adm.Code 4123:1-5-01(B)(92) as such active involvement is not determinative of whether relator was assigned or authorized to work at the press. Thus, *Fetzer* and *Gerstenslager* are not determinative of the question presented in this matter.

{¶ 62} Here, the record reflects testimony supporting a finding that relator was not assigned or authorized to work at the press in question. Rhein stated at the hearing that he was the only person assigned by Postell to operate the press on the day of the injury. May stated relator was not instructed or authorized to be an operator of the press on the day of the injury. Postell stated that relator did not have authorization to assist with the press on the day of the injury. Both May and Postell testified that only Rhein was assigned

to operate the press on that day. Furthermore, Postell testified that relator was required to check with Postell for assignment when relator had completed his previously assigned task. There is no dispute that relator did not receive a specific instruction to work on the press on the day of the injury. Postell also testified that relator would have been required to complete 40 hours of training before he could perform the single-operator task on the press and stated that relator had not completed such training.

{¶ 63} Because some evidence supports the commission's finding that relator was not assigned or authorized to work at the press on the day of the injury, the commission did not abuse its discretion in determining that relator was not an operator under Ohio Adm.Code 4123:1-5-01(B)(92). As relator was not an operator of the press at the time of the injury, he cannot establish that any failure to comply with the specific safety requirement in Ohio Adm.Code 4123:1-5-11(E) was the proximate cause of his injury since such provision only applies "to prevent the hands or fingers of the *operator* from entering the danger zone during the operating cycle." (Emphasis added.) Ohio Adm.Code 4123:1-5-11(E). As a result, relator cannot establish the commission erred in denying his VSSR claim, and, therefore, cannot demonstrate entitlement to a writ of mandamus.

{¶ 64} Second, relator asserts the commission abused its discretion by finding Jay Industries complied with the specific safety requirement in Ohio Adm.Code 4123:1-5-11(E). With regard to the specific safety requirement, the SHO made the following findings:

> Ohio Adm.Code 4123:1-5-11(E) outlines six acceptable methods of guarding. There is no dispute the press in question was equipped with a two-palm button control on a podium/pedestal. The [SHO] finds that this mechanism for activating the press is equivalent to the two-hand control process outlined in subsection (3), since by utilizing this free-standing podium/pedestal set-up to the side of the press requires simultaneous use of both hands to activate the press and is located outside the danger zone during the entire closing cycle of the press. Therefore on the date of the injury, the [SHO] finds [Jay Industries] complied with the requirements of Ohio Adm.Code 4123:1-5-11(E).

(R. 17-18.)

{¶ 65} Relator does not dispute that the press at issue in this case was equipped with a two-palm button control located on a podium outside the danger zone. Relator argues, however, that this method of guarding should only be considered acceptable where the press is used by a single operator, because the method of guarding would not be effective in preventing injury to a second operator. Therefore, relator argues Ohio Adm.Code 4123:1-5-11(E)(3) should not apply in this case where there is evidence that the press was used as a two-person operation. Having found the commission did not abuse its discretion in finding relator was not an operator under Ohio Adm.Code 4123:1-5-01(B)(92) and, therefore, that the injury was not the proximate result of a violation of Ohio Adm.Code 4123:1-5-11(E), it is unnecessary to consider whether Jay Industries complied with the method of guarding provided in Ohio Adm.Code 4123:1-5-11(E)(3).

{¶ 66} Finally, on October 10, 2022, relator filed a motion to consider supplemental certified record pursuant to Loc.R. 13(G). In the motion, relator requests the court consider a "LazerSafe Packet of Information," which "consist[s] of the industry accepted [Occupational Safety and Health Administration] requirements relating to the general standards for all machinery and machine guarding." (Relator's Mot. to Supp. at 1-2.) Relator states that these requirements are relevant to whether Jay Industries violated a specific safety requirement. Relator asserts the supplementary materials were presented before the commission at the January 24, 2022 hearing and were available for review by the commission in reaching its determination. Upon review, the materials attached to relator's October 10, 2022 motion to supplement are not relevant to the question of whether the commission erred in finding relator was not an operator under Ohio Adm.Code 4123:1-5-01(B)(92). As such, it is not necessary to consider such materials in resolving this mandamus action and, therefore, relator's October 10, 2022 motion to supplement is rendered moot.

**D. Conclusion**

{¶ 67} Accordingly, it is the decision and recommendation of the magistrate that the requested writ of mandamus should be denied. Relator's October 10, 2022 motion to supplement is rendered moot.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.